UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-285-KKC

CRYSTAL HIBBARD                                                                                           PLAINTIFF

v.                                              **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                              DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court on the Motions for Summary Judgment of Plaintiff Crystal Hibbard [R. 10] and Defendant Commissioner Astrue [R. 11]. For the reasons given below, Plaintiff Hibbard's Motion is DENIED and Defendant Astrue's Motion is GRANTED.

I.      **Factual and Procedural Background**

Plaintiff Crystal Hibbard filed her application for Social Security Disability Benefits on February 14, 2005. Plaintiff originally alleged a disability onset date of June 15, 1999; she later amended this onset date to May 14, 2004. Plaintiff's claim for disability benefits was denied initially and on reconsideration, and on November 17, 2006, Plaintiff testified at an administrative hearing before Administrative Law Judge [hereinafter "ALJ"] Donald A. Rising.

Plaintiff Hibbard alleges disability due to a combination of impairments, including anxiety, panic attacks, degenerative disc disease, and carpal tunnel syndrome, with primary symptoms of back, neck, and upper extremity pain. Plaintiff complains of upper and lower back pain, and also alleges problems with her right wrist, neck, and shoulders. She claims that her left shoulder freezes up, and that throughout the day her fingers become stiff, tender, and numb. Plaintiff claims that she is unable to sit down for lengthy periods of time because of her back

pain, which she says moves around to different joints of her body. Plaintiff performed secretarial work from 1984 to 1991, worked as a data-entry clerk from 1994 to 1999. She says that she ceased working in 1999 because work was too stressful, as well as mentally and physically demanding, due to her alleged disabilities. Plaintiff also alleges that from 1999 to 2004 she experienced depression, because of which she remained bedridden for much of her time instead of leaving her home to do other activities. Plaintiff claims that during the above time frame, she could sit down perhaps two hours, stand three hours, and use her hand one to 1.5 hours per day. Plaintiff's Motion for Summary Judgment, at 2 [hereinafter "Plaintiff's Motion]; ALJ's Opinion, at 3.

Plaintiff has been seen and treated by a variety of doctors and medical providers. The first appears to be Dr. Harold L. Bushey, who treated Plaintiff from February 1990 to May 1998. Defendant's Motion for Summary Judgment, at 5 [hereinafter "Defendant's Motion"]. An exam conducted by Dr. Bushey in 1990 revealed scoliosis with convexity to the right in the thoracic area and to the left in the lumbar area. Plaintiff's Motion, at 3. Dr. Bushey remarked that Plaintiff's scoliosis was more notable when she was standing up. Plaintiff received further treatment from Dr. Bushey for lumbar strain and anxiety in 1995, 1996, and 1998, and was prescribed Xanax, Voltaren, Vicodin, and Lortab for these conditions. Dr. Bushey also prescribed a wrist splint in 1995 for right wrist and hand pain attributed to carpal tunnel syndrome. Though Dr. Bushey's records indicate that Plaintiff complained of back pain and that she displayed a tenderness or restriction in her back, these records do not opine about any work-related limitations that Plaintiff's noted conditions may cause.

Plaintiff also received treatment from Dr. Mirella Ducu from February 1999 to February

2000. D's Motion, at 6; Plaintiff's Motion, at 3. Dr. Ducu noted that Plaintiff had back pain, anxiety, and other impairments. Dr. Ducu's records, however, did not indicate whether Plaintiff had any functional limitations that would affect her ability to perform work. Defendant's Motion, at 6. Also, from January 1999 to February 2003, Plaintiff received treatment at Butler Health Associates. Records there reflected complaints of back pain and paraspinal spasm, sinus problems, and periodic shoulder or elbow pain. Plaintiff's Motion, at 3; Defendant's Motion, at 5. These records also do not indicate whether Plaintiff would have had functional limitations because of these issues. Plaintiff sought refills of her medications during these visits, and in March 2000, her pain medications were switched to Oxycontin. Plaintiff's Motion, at 3.

From 1995 on, Plaintiff was also treated at the Clay County Medical Center. Throughout this time, Plaintiff brought varied complaints of neck pain, anxiety, and sinus problems. Defendant's Motion, at 6. In July 1997, Plaintiff was treated for cervical-thoracic strain with swelling, and was also noted to have lateral scoliosis. Plaintiff has been diagnosed with scoliosis since she was nine years old. Plaintiff's Motion, at 5. In September 2003, she reported having back pain, scoliosis, and insomnia. *Id.* At this time, Plaintiff was noted to have been off of Oxycontin for two to three months. In October 2003, she again complained of neck and back pain, and in November 2003 and August 2004, she complained of chronic right shoulder pain. In August 2004, Plaintiff was also treated for ear pain and a sore throat, but nothing was noted on this occasion about lasting back or other problems. Defendant's Motion, at 7. In 2006, Plaintiff was treated on three separate occasions for chronic neck pain, left shoulder pain, elbow pain, low back pain, and anxiety. *Id.* Records from the Clay County Medical Center, however, did not explicitly indicate that Plaintiff had any functional limitations due to

3

these diagnoses. Defendant's Motion, at 6.

Plaintiff was also seen by Dr. Josephy Stubbers from May 2003 to September 2005 because of Plaintiff's complaints of chronic back pain. ALJ's Opinion, at 4. Dr. Stubbers' initial physical examination, as well as several subsequent examinations, revealed flattening of the lumbar lordosis, and noted pain and discomfort in the lumbar paraspinal muscles. Plaintiff's Motion, at 4. Another physical examination of Plaintiff in September 2004 revealed mild scoliosis. *Id.*; ALJ's Opinion, at 4. In July 2004, Plaintiff complained of back and ear pain to Dr. Stubbers, who reported that Plaintiff's symptoms remained the same and recommended that Plaintiff obtain radiographs. Defendant's Motion, at 7. X-rays performed in September 2004 returned positive for spurring change throughout the spine, as well as for a mild decrease in joint space. Plaintiff's Motion, at 4. Dr. Stubbers noted that these x-rays showed a possible aneurism, but a later aortic duplex scan did not show aneurism signs. Defendant's Motion, at 7.

In November 2004, Plaintiff reported to Dr. Stubbers that if she takes her medications, her pain is controlled, and her level of functioning is improved in that she can do activities such as performing her ADLs, washing clothes, and cleaning her house. ALJ's Opinion, at 4.; Defendant's Motion, at 7-8. Plaintiff also denied any significant side effects from these medications. At this time, Dr. Stubbers did not note any abnormalities on the Plaintiff's examination; he only recommended that Plaintiff adjust her diet and exercise to help control her blood pressure and cholesterol level. Defendant's Motion, at 7. On January 13, 2005, Plaintiff returned to Dr. Stubbers with complaints of back pain, though she admitted that her pain was controlled well with Oxycontin. Defendant's Motion, at 8. Dr. Stubbers noted that Plaintiff had flattening of her T-spine with bilateral paraspinal muscle spasm. *Id.* Dr. Stubbers initially

prescribed Piroxicam, Amitriptyline, and Ultram, and he decreased the dosage level of Oxycontin prescribed earlier by thirty percent. Plaintiff's Motion, at 4. In March 2005, Plaintiff again admitted the effectiveness of her pain medication. Defendant's Motion, at 8. At this time, Dr. Stubbers also prescribed wrist splints for Plaintiff's carpal tunnel syndrome. Plaintiff's Motion, at 4. Plaintiff's physical examination at this time included a full range of motion in all extremities. Defendant's Motion, at 8. In September 2005, Plaintiff again returned to Dr. Stubbers for anxiety, hypertension, hypercholesterolemia, and other complaints. *Id.* At this time, Dr. Stubbers noted that Plaintiff had flattening of the lumbar lordosis with pain. *Id.* However, Dr. Stubbers' treatment records do not opine about any functional limitations that Plaintiff may have regarding her ability to work. *Id.*

    Plaintiff was given no recommendations for surgery, nor she undertake physical therapy for her conditions. ALJ's Opinion, at 5. No EMG or NCV studies were performed on Plaintiff. *Id.* Plaintiff never sought treatment from a specialist physician for her conditions, instead being treated solely by general practitioners. *Id.* Plaintiff was not referred for mental-health treatment and is not presently undergoing such treatment. *Id.* Plaintiff currently takes nerve pills, but uses no other kind of psychotropic medication. *Id.* Plaintiff stated that despite her alleged physical and mental impairments, she is still able to engage in a variety of activities, including caring for her personal needs, cooking, doing laundry, washing dishes, paying bills, going shopping, watching television, feeding her dogs, visiting family and friends, and driving. *Id.* at 6.

    Plaintiff's medical record was reviewed by Social Security Agency examiners Drs. Humildad Anzures and David Swan, in June and December 2005, respectively. Both examiners concluded that Plaintiff did not have a severe physical impairment as of December 31, 2004,

Plaintiff's date last insured. Defendant's Motion, at 11. Moreover, Social Security Agency examiner Dr. Larry Freudenberger reviewed Plaintiff's medical record in November 2005, and concluded that Plaintiff did not have a severe mental impairment by December 31, 2004. *Id.* There were no other physical or mental residual functional capacity assessments from any other physicians.

On December 28, 2006, the ALJ issued an opinion denying Plaintiff's application for disability benefits. The ALJ found that, as of December 31, 2004, Plaintiff had the medically determinable impairments of minimal spurring at L4-L5 and anxiety. ALJ's Opinion, at 3. However, the ALJ found that these impairments did not constitute "severe" impairments, since Plaintiff's impairments did not significantly limit her ability to perform basic work-related activities for twelve consecutive months. *Id.* at 4. The ALJ observed that Plaintiff had failed to produce objective medical evidence to confirm the alleged severity of her symptoms, or that the objectively determined medical conditions were of such severity that they could give rise to her alleged symptoms. *Id.* at 5. Therefore, the ALJ concluded that Plaintiff was not under a "disability" within the meaning of the Social Security Act prior to her date last insured of December 31, 2004. *Id.* at 6. The Social Security Appeals Council denied review of the ALJ's opinion, Commissioner Astrue adopted the opinion, and Plaintiff sought review before this Court.

**II.   Standard of Review**

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III.    Analysis**

In her challenge to the ALJ's denial of her application for Social Security disability benefits, Plaintiff raises only one argument: the ALJ's decision that Plaintiff has no severe impairments was not supported by substantial evidence of record. As an initial matter, the ALJ determined that Plaintiff's disability insured status expired on December 31, 2004. *See* ALJ's Opinion, at 1. To be eligible for Social Security disability benefits, therefore, Plaintiff had to prove that she was disabled between May 14, 2004, her alleged onset date, and December 31, 2004, her date last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.101, 404.131, 404.315(a); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order

to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status."). If there is substantial evidence to support the ALJ's decision that Plaintiff was disabled between May 14, 2004 and December 31, 2004, the ALJ's decision must be upheld by this Court against Plaintiff's challenge. The Court finds that there is substantial evidence to support this decision.

To determine whether a social security claimant is legally disabled, the ALJ must perform a five-step evaluation. The claimant bears the burden of proof for the first four steps, the ALJ bears the burden for the fifth step. First, if the claimant is performing substantial gainful work, she is not disabled. Second, if the claimant is not performing substantial gainful work, her impairment(s) must be considered "severe" before can be considered disabled. Third, it must be determined whether the claimant's impairment is at least as severe as one in the Social Security Act's Listing of Impairments, and is expected to result in death or to last at least twelve months. If so, the claimant is presumed disabled. Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, she is not disabled. Finally, even if the claimant cannot perform her past relevant work due to her impairments, if other work exists in the national economy in significant numbers that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4); *Kornecky v. Comm'r of Soc. Sec*, 167 Fed. Appx. 496, 498-500 (6th Cir. 2006).

In this case, the ALJ properly performed this step-by-step evaluation of Plaintiff's disability application. After making his finding about Plaintiff's date last insured, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period, from May 14, 2004 to December 31, 2004. ALJ's Opinion, at 3. Next, the ALJ

considered the medical evidence of record and concluded that Plaintiff had the medically determinable impairments of minimal spurring at L4-L5 and anxiety. These conclusions are not challenged by the Plaintiff in this action. Finally, the ALJ determined that the aforementioned impairments cannot be considered "severe" within the meaning of the Social Security Act and regulations. "Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." *Id.* at 4. It is this finding with which Plaintiff takes issue, as Plaintiff argues that this determination is not supported by substantial evidence and that the ALJ thus improperly found that Plaintiff does not have a severe impairment or combination of impairments.

There is substantial evidence of record to support the ALJ's determination that Plaintiff did not have a severe impairment or combination of impairments during the relevant time period of May 14, 2004 to December 31, 2004. A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to perform basic work activities. *See* 20 C.F.R. §§ 1520(c), 1521(a). Furthermore, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). As noted above, to be considered possible grounds for disability, Plaintiff must establish that her impairments were "severe" between May 14, 2004, her amended onset date, and December 31, 2004, her date last insured. Consequently, evidence indicating only that an impairment may have been severe prior to the onset date, but not

9

also indicating that this impairment could still be considered severe on or after this date, does not undermine a finding of no severity. Similarly, evidence indicating only that an impairment may have became severe after the date last insured, but not also indicating that this impairment was severe on or before this date, also does not aid the disability claimant. *See Kornecky*, 167 Fed. Appx. at 497 ("In order to qualify for SS [social security] benefits, [plaintiff] had to establish that she had a disability on or before her date last insured . . . ."); *Wirth v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.").

Substantial evidence of record indicates that Plaintiff's impairments did not significantly limit her physical and mental abilities to perform basic work activities. Despite the fairly large volume of medical treatment records obtained from various physicians and treatment centers, none of it explicitly indicates that Plaintiff's impairments significantly interfere with her work-related activities. As the ALJ noted in his opinion, Plaintiff has submitted no medical-source opinions from any physician opining that Plaintiff's conditions create any functional limitations that would impede her ability to work. *See* ALJ's Opinion, at 6. Specifically, no physical or mental residual functional capacity assessments were offered as evidence by the Plaintiff that her impairments are legally "severe." *Id.* Instead, the only opinion evidence regarding Plaintiff's functional abilities to do work-related activities came from Social Security Agency examining physicians. All of these examiners, after reviewing Plaintiff's medical treatment records, concluded that Plaintiff did not suffer from any severe impairment: Drs. Anzures and Swan opined that Plaintiff did not suffer from a severe physical impairment, and Dr. Freudenberger

also opined that Plaintiff had no severe mental impairment[1] Thus, the only medical opinions offered that directly address the severity of Plaintiff's medical impairments clearly undermine the alleged severity of those impairments.  It was proper for the ALJ to consider these agency examiners' opinions in his disability determination.  The Social Security regulations permit the ALJ to consider the medical opinions of State agency consultants; indeed, they are considered experts in Social Security disability evaluation.  20 C.F.R. § 404.1527(f)(2).  It was also proper for the ALJ to place weight on the fact that Plaintiff submitted no medical opinions or statements indicating any functional limitations, "because 'a lack of physical restrictions constitutes substantial evidence for a finding of non-disability.'" *Longworth v. Comm'r, Soc. Sec. Admin.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)).

The other evidence of record, like the agency examiner opinions and the lack of conflicting medical opinions, also provides substantial evidence in support of the ALJ's decision.  Plaintiff emphasizes that she has been diagnosed with a number of physical and mental ailments by her physicians and other health providers, and has undergone treatment for these problems.  She argues that this medical history establishes that fact that she has severe medical impairments.  Dr. Bushey diagnosed Plaintiff with scoliosis and carpal tunnel syndrome, treated her for lumbar

---

[1] Plaintiff appears to argue that one of these agency examiner opinions, that of Dr. Swan, should not be entitled to much probative value because of an alleged mistake in its analysis.  The opinion reads, "Claimant's allegations only concern impairments that developed after the DLI [date last insured]."  Opinion of Dr. Swan, Transcript, at 185.  Plaintiff states that this conclusion is in error, since "[Plaintiff's] back problems have existed for many years as further reflected in treatment records submitted at the hearing level."  Plaintiff's Motion for Summary Judgment, at 8.  The Court need not decide whether Plaintiff's argument here is correct.  Even if Dr. Swan's analysis is flawed, as Plaintiff claims, his analysis on the issue of severity is but one of three.  The other two agency examiner opinions reach the same ultimate conclusion that Dr. Swan's does—that Plaintiff did not have a severe impairment, physical or mental, during the relevant time period.  These opinions are not rebutted by the conclusions of contrary functional capacity assessments.  Therefore, even assuming Plaintiff's argument here is correct, and the ALJ committed error in accepting Dr. Swan's opinion, this error was harmless.

strain and anxiety, prescribed her various medications, and noted her complaints of back pain and tenderness. Dr. Ducu noted Plaintiff's back pain, anxiety, and other impairments. Butler Health Associates noted Plaintiff's complaints of back, shoulder, and elbow pain, paraspinal spasm, and sinus problems. Clay County Medical Center again diagnosed Plaintiff with scoliosis, as well as lateral-thoracic strain, and also recorded Plaintiff's complaints of neck, back, shoulder, and elbow pain, anxiety, insomnia, and sinus problems. Finally, Dr. Stubbers diagnosed Plaintiff with flattening of the lumbar lordosis, mild scoliosis, spurring change in the spine, and a mild decrease in joint space. Dr. Stubbers also again noted Plaintiff's complaints of back and ear pain, as well as discomfort in the paraspinal muscles.

     The fact that Plaintiff has been diagnosed and treated for these various conditions, however, does not by itself lead to an inference that Plaintiff has severe impairments under the Social Security Act. "The mere diagnosis . . . , of course, says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. Rather, Plaintiff has the burden to produce objective medical evidence to prove that these physical and mental conditions caused functional limitations, that is, significantly limited the Plaintiff's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). This objective medical evidence consists of signs, symptoms, and laboratory findings, not only by a statement of symptoms. *Id.* § 404.1508. The Plaintiff's subjective complaints of pain must also be considered in determining whether Plaintiff satisfied this burden of proving severity. However, with regards to these subjective pain complaints, the Plaintiff must show that objective medical evidence confirms the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Bartyzel v.*

*Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 525 (6th Cir. 2003).

The ALJ specifically noted that, in determining whether Plaintiff satisfied her burden of proving severity by objective medical evidence, "I have considered, among other things, [Plaintiff's] allegations of pain and other subjective symptoms, her daily activities, and her use of medication." ALJ's Opinion, at 5. The ALJ ultimately concluded that Plaintiff's medical record, pain allegations, and symptoms, despite the above-listed diagnoses and treatment, did not meet Plaintiff's evidentiary burden regarding the severity of her impairments. *Id.* There is substantial evidence, documented by the ALJ, to support this determination. Plaintiff's treatment history, as the ALJ noted, was fairly routine and conservative, indicating a lack of severity in her impairments. *Id.* Plaintiff received no surgery recommendations, physical therapy, or other forms of aggressive treatment for her impairments. Instead, Plaintiff's pain was primarily treated by medication, which she admitted on numerous occasions controls her pain considerably and allows her to function better. *Id.* Plaintiff denies experiencing any significant side effects from these medications. *Id.* Beyond the diagnoses listed above, for which Plaintiff was effectively treated by pain medication, Plaintiff's physical examinations were essentially unremarkable, which helps explain why surgery or other advanced medical treatment was never recommended. *Id.*; Defendant's Motion, at 5-8.

Further evidence that the ALJ emphasized also provides clear support for his decision. Plaintiff has never sought treatment from a specialist. Rather, her medical care has always been from general practitioners, none of whom, as discussed, have assessed any functional limitations in Plaintiff due to her impairments. *Id.* Though Plaintiff has claimed problems with her hand, the evidence did not indicate that EMG or NCV studies were ever performed. *Id.* Plaintiff

claims total disability in part due to her scoliosis, but she has been diagnosed with this impairment since the age of nine. Despite this history of scoliosis since childhood, Plaintiff was still able to maintain employment until 1999, which casts doubt on her allegations of disabling pain. Defendant's Motion, at 5. With regards to the alleged psychological impairments of depression and anxiety, the ALJ determined that there has never been a diagnosis or other objective medical evidence indicating regular complaints of, and treatment for, these impairments. ALJ's Opinion, at 5. Although this observation appears to be contradicted with regards to anxiety, as Plaintiff's treatment records make mention of anxiety complaints, *see* Defendant's Motion, at 6-8, the ALJ's conclusion regarding Plaintiff's depression complaints appears sound. Moreover, Plaintiff is not undergoing any mental-health treatment for her alleged psychological problems, other than taking medication for her nerves, and has no history of any such treatment. ALJ's Opinion, at 5.

Finally, as the ALJ observed, Plaintiff's routine activities and functions are plainly inconsistent with the assertion that she is a totally disabled individual. Despite her alleged inability to engage in any work-related activities due to her medical impairments, Plaintiff admitted that she is able to care for her personal needs, cook, do laundry, wash dishes, pay her bills, go shopping, watch television, care for her dogs, visit family and friends, and drive. *Id.* at 6. This admitted ability to engage in such a variety of activities provides further evidence that simultaneously undercuts Plaintiff's claims of severe physical and mental impairments and supports the ALJ's conclusion of nondisability.

The ALJ's determination that Plaintiff does not have a "severe" physical or mental impairment, and is therefore not disabled within the meaning of the Social Security Act, is

14

supported by substantial evidence of record. Therefore, the Court must uphold the ALJ's decision, grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment.

**WHEREFORE,** for the reasons stated above,

1. The Defendant's Motion for Summary Judgment is GRANTED; and

2. The Plaintiff's Motion for Summary Judgment is DENIED.

Dated this 4th day of February, 2008.

Signed By:
*Karen K. Caldwell*
United States District Judge